## JAMES M. HAWTHORNE v. THE MAYOR AND COUNCIL OF THE CITY OF HOBOKEN.

1. The authority to secure, by bonds, the payment of money to be raised under the supplement to the charter of Hoboken, of Febuary 28th, 1866, for procuring volunteers from the city, was for the relief of the city, but did not require the volunteer to take payment in such bonds, and unless he had agreed to receive them, the city was bound to give him city scrip, as provided by their resolution, or pay the amount in money.

2. The declaration in this case showed, *prima facie*, that the plaintiff was a resident of Hoboken when he volunteered and was mustered into service, and was sufficient.

3. The charter of the city having been declared a public act, for the purpose of judicial recognition, the supplement will also be considered a public act for the same purpose.

In case. On demurrer to declaration.

By a supplement to the charter of the city of Hoboken, approved February 28th, 1865, the mayor and council were authorized to borrow money to pay such bounties as they might direct, to every volunteer, drafted man, or volunteer from the city, obtained to fill the quota of the city, under any call then made, or to be made, by the president of the United States, and to secure the payment of such indebtedness by bonds. Thereupon, the mayor and council resolved that a city scrip for the amount of three hundred and fifty dollars, in addition to the bounty of four hundred dollars allowed by the county, should be issued to every drafted man or volunteer from the city, under the late call of the president, who should volunteer or furnish an acceptable substitute for one or more years, and be duly credited to the quota of the city.

The plaintiff declared, that in consideration of such promised bounty and scrip, he then and there volunteered, and was mustered into service and sworn for one year, as one of the quota of the city; and that defendants refused to deliver him the scrip, as stipulated, or make payment.

To this declaration there was a demurrer, which was argued before the CHIEF JUSTICE and Justice BEDLE.

For the defendant, *I. W. Scudder*.

For plaintiff, *J. P. Bradley*.

The opinion of the court was delivered by

BEDLE, J. This suit is founded upon a resolution of the city of Hoboken, in the following language:

"*Resolved*, That a city scrip, for the amount of three hundred and fifty dollars, in addition to the county bounty of four hundred dollars, be issued to every drafted man or volunteer from the city, entering the service under the late

call of the president of the United States for three hundred thousand men, provided such drafted man or volunteer shall enter the military service of the United States, or furnish the acceptable substitute for one or more years, and shall be duly credited to the quota of this city, under the present call."

The declaration alleges that this resolution was adopted by the mayor and council of the city, on the twentieth of March, 1865; that by the proclamation of the president of the United States, of December 19th, 1864, under the act of congress, the three wards of the city failed, by two hundred and twenty-four men, to fill their quotas, and became thereby liable to a draft to supply such deficiency; and that to obtain volunteers, as a part of said quota, such resolution was adopted; "that, in consideration of such promised bounty and scrip, the plaintiff offered himself and was accepted as such volunteer, and did, then and there, enter, and was duly mustered into the said military service, as such volunteer, for one year, as one of the quota to the said wards, &c., under the aforesaid call, &c., and was then and there duly credited, by the proper military authorities of the United States, to the quota of the said city, &c., in consideration, &c., and that the city refused to deliver said scrip," &c. One of the objections taken to the declaration is, that it does not show any authority, on the part of the city, to pass the resolution. The fourth section of the supplement of February 28th, 1865, to the act entitled "an act to incorporate the city of Hoboken," approved March 28th, 1855, gives power to the mayor and council to borrow a sum of money, not exceeding one hundred thousand dollars, for the purpose of paying such bounties as the said mayor and council may, from time to time, deem expedient, to every volunteer, drafted man, or substitute, obtained to fill the quota of the city of Hoboken under the present call of the president of the United States, or the quota upon any future call which may be hereafter made by the said president." And the fifth section gives power to secure, on payment of such

indebtedness, by bonds; and also to provide by taxation for the payment of the principal and interest.

The original act, incorporating the city of Hoboken, declares that the same shall be a public act, § 7, *Laws*, 1855, *p.* 482; and for the purpose of judicial recognition, the supplement will follow the original. The original being a public act, the supplement to it is to be taken *in pari materia;* such is the well settled rule of construction. *Statutory Law*, § 821; *Newark City Bank* v. *Assessor*, 1 *Vroom* 22.

It was, therefore, not necessary to plead it specially. 1 *Chitty on Pleading* 215; 1 *Greenl. Ev.*, § 481.

The fourth section of the supplement of 1865 clearly contemplates the contracting of the city for volunteers. The scrip is the promise or obligation of the city to pay the amount of the bounty. The objection that the city could only issue *bonds*, as provided in the fifth section, for a long period to run, does not affect the obligation of the city to pay the volunteer. The city could borrow money and secure it by bonds, for a long time, to pay the bounties; but this does not relieve the city from the duty of paying the volunteer, either by giving him his money, or delivering to him the evidence that he was entitled to it, as they had promised by resolution. The city could turn the indebtedness into a permanent loan for its own relief, but this would not require of the volunteer to take his bounty in that way, unless he had agreed to do it. The declaration does not show the terms of the scrip. In the absence of any evidence to the contrary, it would be considered as a mode of temporary relief to the city from immediate payment, but being an obligation or promise to pay, either in money or perhaps in bonds, under the act. In either case, the plaintiff was entitled to it under the resolution, as the declaration stands, or damage for withholding it, if he had become enlisted according to the resolution.

It is also objected, that the declaration does not show that the plaintiff was a volunteer resident in the city of Hoboken, or its wards. Reference is made to the act of congress of

March 3d, 1865, section fourteen, which provides "that here-after all persons mustered into the military or naval service, whether as volunteers, substitutes, representatives, or other-wise, shall be credited to the state, and to the ward, township, precinct, or other enrollment sub-district, where such persons belong, by actual residence, if such persons have an actual resi-dence within the United States, and where such persons were or shall be enrolled, (if liable to enrollment.)" Certainly for-eigners, notwithstanding this section, could enlist as volunteers, and be credited to the city, and without anticipating any con-struction in its application to others, or to the facts of this case, as they may be hereafter developed in the pleadings or on the trial, it is sufficient for the present that the declaration does, *prima facie,* show that the plaintiff was a resident of Hoboken. It alleges that he was accepted as such volunteer, referring to the character of volunteer mentioned in the resolution, and that he did enter and was duly mustered into the military service as such volunteer, as one of the quota allotted to the wards of said city, and was duly credited by the proper mili-tary authorities of the United States to the quota of said city, under said call. In the absence of anything otherwise, with these allegations, the law presumes that he was duly enlisted and credited under the act of congress, as a proper volunteer. The plaintiff is not obliged to remove, in his pleading, every objection with which his adversary may intend to oppose him. 1 *Chitty Pl.* 222. The declaration makes out a sufficient *prima facie* case.

It is unnecessary to refer to the objection that the city has no power, even under an act of the legislature, to provide volunteers to avoid a draft. That question has been disposed of by the Court of Errors, in the case of *The State, Ruckman, pros.,* v. *The Township of Harrington,*\* and also by the action of this court, on various issues upon *certiorari* in such cases.

The demurrer must be overruled.

CITED in *State, Vreeland, pros.,* v. *Bergen,* 5 *Vroom* 439; *Morrow* v. *In-habitants of Vernon,* 6 *Vroom* 492.

\* *Post* 528.